UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| BARBARA H., ) | |
|     *Plaintiff*, ) | |
| v. ) | No. 19 CV 50011 |
| ) | Magistrate Judge Iain D. Johnston |
| ANDREW SAUL, ) | |
| Commissioner of Social Security, ) | |
|     *Defendant*. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Barbara H.[1] brings this action under 42 U.S.C. § 405(g) seeking remand of the decision denying her social security benefits. For the reasons given below, the plaintiff's motion for summary judgment is denied, the Commissioner's motion for summary judgment is granted, and the ALJ's decision is affirmed.

## I. BACKGROUND

The plaintiff applied for Tile XVI supplemental security income benefits on November 14, 2014, alleging that spinal stenosis and high blood pressure had left her disabled since June 30, 2013. R.116, 251. Her claims were denied initially, R.105-07, and on reconsideration, R.128-29. The plaintiff then sought a hearing, which the Administrative Law Judge conducted on July 13, 2017, with the plaintiff represented by counsel. R.11. At the hearing, the plaintiff testified about pain in her hands, back, hips and legs, numbness in her feet, that it hurt to walk, and that a burning sensation in her legs kept her from standing for longer than 10-15 minutes at a time. R.53-54. Medical expert Dr. Ronald Semerdjian testified that an MRI showed "mild neuroforaminal narrowing with mild displacement of the nerve root" at levels L2-3 and L3-4, and "L5 retrolisthesis and bilateral moderate to severe neuroforaminal narrowing." R.72. He

---

[1] Plaintiff's last name has been redacted in accordance with Internal Operating Procedure 22.

described records of the plaintiff's reports of pain including "low back pain going into the foot and gait," and "a couple epidural steroid injections," only the first of which provided some relief. R.73. He also noted a CT angiogram that showed 75% stenosis of the mid-right renal artery and proximal left superficial artery, and 50% narrowing of the right popliteal and the left superficial, which equated to "fairly extensive clotting in the arterial circulation." *Id.* But he also remarked that there was no documented intermittent claudication. *Id.* Vocational expert Richard Fisher testified that based upon the plaintiff's age and background, and restrictions the ALJ presented in a hypothetical including being limited to light work except can occasionally climb ladders, ropes, and scaffolds, ramps, stairs, stoop, kneel, couch, and crawl, frequently handle bilateral with the upper extremities, and must avoid concentrated exposure to pulmonary irritants and hazards including dangerous moving machinery and unprotected heights, the plaintiff's past work would be eliminated, but she could still work as a marker (DOT 209.587-034), housekeeping/cleaner (DOT 323.687-014), or mail clerk (DOT 209.687-026). R.99-100.

After the hearing, the ALJ followed the five-step evaluation process set forth by the Social Security Administration in 20 C.F.R. § 404.1520(a)(4) and found that the plaintiff was not disabled. The ALJ specifically found that: (1) at Step One, the plaintiff had not engaged in any substantial gainful activity since her application date of November 14, 2014, R.13; (2) at Step Two, the plaintiff had "the following severe impairments: degenerative joint disease of the lumbar spine, hypertension, bilateral carotid stenosis, degenerative joint disease of both thumbs, chronic obstructive pulmonary disease (COPD) with asthma, arterialsclerotic disease of the lower extremities," *id.*; (3) at Step Three, the plaintiff did not have an impairment or combination of impairments that met or equaled any listed impairment, R.14; (4) the plaintiff had the residual functional capacity to perform light work except she can occasionally climb ladders, ropes,

scaffolds and ramps/stairs, occasionally stoop, crouch, kneel, and crawl; should avoid concentrated exposure to pulmonary irritants, can handle frequently with both upper extremities, and should avoid concentrated exposure to hazards including dangerous moving machinery and unprotected heights, R.15; (5) at Step Four, the plaintiff could not perform her past relevant work, R.19; and (6) at Step 5, jobs exist in the national economy that the plaintiff could perform, including marker, housekeeping/cleaner, or mail clerk, R.20-21.

## II. STANDARD OF REVIEW

A reviewing court may enter judgment "affirming, modifying, or reversing the decision of the Commissioner [], with or without remanding the cause for rehearing." 42 U.S.C. § 405(g). The Commissioner's denial of disability is conclusive when supported by substantial evidence. *Id.*; *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). The Court may not displace the ALJ's judgment by reconsidering facts and evidence, reweighing evidence, or by making independent credibility determinations. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008); *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). Similarly, even if reasonable minds could differ on whether a claimant is disabled, a reviewing court must affirm the ALJ's decision if it is adequately supported. *Simila v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009).

However, review of an ALJ's decision is not a rubber stamp of approval. *Biestek*, 139 S. Ct. at 1154 ("mere scintilla" not substantial evidence). The court must critically review the ALJ's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008). The ALJ's conclusion will not be affirmed where he fails to build a logical bridge between the evidence and his conclusion,

even if evidence exists in the record to support that conclusion. *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008); *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002) (where opinion is "so poorly articulated as to prevent meaningful review" the case must be remanded). Additionally, courts may not build a logical bridge for the ALJ. *Mason v. Colvin*, 13 CV 2993, 2014 U.S. Dist. LEXIS 152938, at *19-20 (N.D. Ill. Oct. 29, 2014).

### III. ANALYSIS

The plaintiff offers three reasons why she contends the ALJ's determination that she is not disabled should be overturned: (1) the ALJ did not account for evidence of nerve root impingement; (2) the ALJ did not account for evidence of worsening peripheral artery disease in her legs; and (3) the Appeals Council did not properly address post-hearing evidence. The Court addresses each argument in turn.

#### A. Evidence of Nerve Root Impingement

The plaintiff argues that the ALJ erred because "nowhere in the decision does the ALJ acknowledge that plaintiff had nerve root impingement of the lumbar spine." Dkt. 11 at 6. She contends the error is significant because nerve root impingement would explain the pain and numbness in her legs and feet she has described. *See Reynolds v. Colvin*, No. 13 CV 1354, 2015 U.S. Dist. LEXIS 8246, at *39-40 (N. D. Ind. Jan. 23, 2015) ("[i]t is commonly known that nerve root impingement is a cause of pain, tingling, numbness and muscle weakness."). She further contends that the evidence would have limited her to sedentary work, and because she had no skilled or semi-skilled work history and at 52 was closely approaching advanced age, she had no skills to transfer to sedentary work, and therefore under Grid Rule 201.12 would have been found to be disabled. *See* 20 C.F.R. Pt. 404, Subpt. P, Appx 2.

However, nowhere in her briefs does the plaintiff cite evidence of a nerve root impingement of the lumbar spine. She does cite to an MRI performed on June 11, 2014, which found "spondylosis in her lumbar spine with displacement of the nerve roots at two levels." Dkt. 11 at 3 (citing R.324). But that MRI of the plaintiff's lumbar spine, including its finding of "[l]eft foramen mild stenosis and mild displacement exiting nerve root in far later foramen" at level L2-L3, and "[m]ild proximal foramen stenosis but only slight displacement exiting foraminal nerve root" at level L3-L4, R.324, was repeatedly addressed. In a report dated January 9, 2015, state agency Dr. Lenore Gonzalez noted the evidence of the MRI and that it revealed "lumbar spondylosis and disc disease. No significant central spinal canal stenosis but foramen stenosis with most significant at L5-S1." R.109. Similarly, in a report dated August 13, 2015, state agency Dr. Vidya Madala also noted the MRI as evidence affecting the plaintiff's exertional limitations, and that it revealed "DDD w/ NF (but not central) stenosis." R.124. Both state agency doctors concluded that the plaintiff could nevertheless perform light work. R.113 (Dr. Gonzalez), 126 (Dr. Madala).

In addition, medical expert Dr. Semerdjian testified at the plaintiff's July 13, 2017, hearing and addressed the MRI twice. R.72, 84-86. During the hearing plaintiff's counsel even asked Dr. Semerdjian if the plaintiff's complaints of pain in her legs could be attributed to the nerve root displacement revealed by the MRI, to which he responded that it could, but that did not change his opinion that she could perform light work. R.48-49. The ALJ gave substantial weight to the opinion of Dr. Semerdjian because of his reliance on the entire record. The ALJ gave only some weight to the assessments of the state agency Drs. Gonzalez and Madala because their reports predated two years' worth of the medical records Dr. Semerdjian had considered.

5

*Id.* But all three doctors had considered the results of the June 11, 2014, MRI in finding that the plaintiff could still perform light work, a finding the ALJ adopted.

The ALJ also addressed the MRI and finding of nerve root displacement in her summary of the medical evidence, R.17, and importantly in her explanation of why she gave substantial weight to Dr. Semerdjian's opinion that the plaintiff's medical history did not affect her ability to perform light work, and her ultimate conclusion that the plaintiff could perform light work with restrictions. Specifically, the ALJ acknowledged the plaintiff's "history of degenerative disc disease," the "MRI study performed in 2014 [that] showed spondylosis and disc disease throughout with no evidence of central spinal canal stenosis but with some foraminal stenosis most significant at L5-S1," "subsequent x-rays [that showed] no evidence of worsening in functioning and her gait has remained stable since her alleged onset date," and "an EMG [that] showed no evidence of radiculopathy." R.18.

After the government called out the plaintiff on her lack of citation to evidence of nerve root impingement, Dkt. 17 at 2, in her reply brief she refers only to the evidence of her nerve root displacement, rather than impingement, and argues that every doctor ignored this "neurological component to her complaints," Dkt. 18 at 2. But as discussed above, the doctors and ALJ did account for evidence of the plaintiff's nerve root displacement, yet still found her capable of light work with restrictions. To the extent the plaintiff contends that the Court should evaluate the medical evidence of nerve root displacement and reach a different conclusion on how it affects her ability to work, courts may not "reweigh the evidence or substitute our judgment for that of the ALJ." *L.D.R. v. Berryhill*, 920 F.3d 1146, 1152 (7th Cir. 2019) (internal quotation marks and citations omitted).

In short, the plaintiff's assertion that every doctor and the ALJ ignored the findings of her June 11, 2014, MRI and the "neurological component to her complaints" it provided is unsupported by the record and not a basis to remand.

### B. Evidence of Worsening Complaints of Feet and Leg Pain

Next, the plaintiff argues that the ALJ erred by failing to account for evidence of her worsening complaints of pain in her legs and feet. During the hearing, Dr. Semerdjian testified that he based his opinion that the plaintiff could still perform light work in part on evidence that she denied intermittent claudication.[2] R.86. But according to the plaintiff, evidence that she denied intermittent claudication predated her later complaints of pain in her legs and feet. Specifically, she denied intermittent claudication back in April 13, 2015, R.519, while she contends that it "was not until September of 2015 that she began to complain of bilateral feet and leg swelling," during a visit to the emergency room, citing R.624, and "August 2016 [when] plaintiff complained to her primary care doctor, Dr. Rogers, of bilateral leg pain and she continued to be prescribed gabapentin," citing R.462. Dkt. 11 at 9. The plaintiff argues that because her "complaints regarding her legs worsened over time," R.11 at 8, the ALJ's reliance of Dr. Semerdjian's opinion that she could perform light work because she denied intermittent claudication in April 2015, *before* her complaints of pain in late 2015 through 2016, is not based on substantial evidence.

Although the ALJ did not specify the September 2015 and August 2016 medical records of the plaintiff's complaints of pain and swelling in her legs and feet, the ALJ did note a similar

---

[2] Intermittent claudication is "a complex of symptoms characterized by pain, tension, and weakness in a limb when walking is begun, intensification of the condition until walking becomes impossible, and disappearance of the symptoms after a period of rest. It is caused by reversible muscle ischemia that occurs in occlusive arterial disease of the limbs." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY (33d ed. 2019), https://www.dorlands.com/dorlands/def.jsp?id=100021752 (last visited June 25, 2020).

7

record from the plaintiff's October 17, 2016, appointment with Dr. Robin Hovis, which showed "pain in both hips with internal [rotation] and leg lifting," but "no evidence of impaired range of motion in her hands, fingers, toes, wrists, elbows, shoulders, ankles or feet." R.18 (citing R.464-65). In addition, during the hearing, Dr. Semerdjian recounted the plaintiff's presentment to the emergency room on September 16, 2015, complaining of bilateral leg swelling after having run out of diuretic water pills. R.78 (discussing R.624). Dr. Semerdjian also noted that the plaintiff returned to the emergency room three days later on September 19, 2015, for shortness of breath, her continuing leg edema was noted, but "the exam was pretty much within normal limits, musculoskeletal full normal range of motion is what they noted. Strength and sensation intact in all extremities. Gait is normal." R.79 (discussing to R.634).

Although the ALJ did not note the September 2015 and October 2016 reports of pain and swelling, an ALJ does not need to list every piece of evidence in her opinion as long as she has not ignored an entire line of evidence that is contrary to her ruling. *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003). Here, the ALJ did take note of the plaintiff's report of back and foot pain during her October 17, 2016, visit with Dr. Robin Hovis. R.18, 464. She also noted that she was giving substantial weight to the opinion of Dr. Semerdjian because of his thorough review and summary of the record, as opposed to only some weight she gave to the state agency physician opinions because they had not reviewed the most recent two years' of medical records. The ALJ also asked plaintiff's counsel if there was *any* evidence of the plaintiff "complaining about claudication either intermittent or otherwise," to which counsel responded there was not, but the plaintiff had complained of pain radiating down her leg. R.95-96. Thus, it is clear the ALJ accounted for recent evidence of the plaintiff's complaints when agreeing with

8

Dr. Semerdjian's opinion that despite the complaints the plaintiff could still perform light work, even if the ALJ did not list each piece of recent evidence.

Moreover, the plaintiff's assertion that she began complaining of leg and foot pain and swelling only after she denied intermittent claudication in April 2015 is not supported by the record. As noted by both the ALJ and Dr. Semerdjian, she reported pain radiating down her right leg to her foot in May 2014, R.16, 72, and pain and swelling in her left foot in November 2014, R.17, 73. Although the plaintiff contends that the September 2015 and October 2016 reports of pain and swelling show that her condition was worsening, she has not explained, and it is not clear from the reports themselves, how they are anything more than cumulative evidence showing that she continued to have pain and swelling in her legs and feet, as opposed to evidence that her pain and swelling was worsening.

The plaintiff has not shown that the ALJ's decision fails to account for evidence of leg and foot pain and swelling from after she denied intermittent claudication in April 2015, and therefore her argument for a remand on this basis is unavailing.

    **C.    Post-Hearing Evidence**

Finally, the plaintiff argues that her case should be remanded under sentence six of 42 U.S.C. § 405(g) because of the Appeals Council's treatment of evidence she submitted to it after the ALJ issued her written decision on November 28, 2017. According to the plaintiff, she visited Dr. Sara Mijal on August 17, 2017 – a little over a month after her ALJ hearing – complaining of pain in her left thigh, and numbness in her thighs and toes while walking. R.10 (citing R.35). A carotid artery duplex found she "had some progression on the right to a 60-79% lesion over the last 16 months." R.36. Then during a visit to Rockford Vascular Lab on

9

December 15, 2017, registered vascular technologist Ruth Penticoff determined the plaintiff had an ankle-brachial index, or ABI, of 0.27. R.39.

The plaintiff contends that the evidence would have been relevant because Dr. Semerdjian testified that the lack of evidence of intermittent claudication or an ABI showing diminished blood flow factored into his determination of how long she could stand and walk. Dkt. 11 at 11 (citing R.92). The plaintiff also contends that an ABI of less than 0.50 establishes that she has peripheral arterial disease and meets Listing 4.12(A). However, the Appeals Council responded to the new evidence as follows: "We find this evidence does not show a reasonable probability that it would change the outcome of the decision. We did not exhibit this evidence." R.2.

Under sentence six of 42 U.S.C. § 405(g), the district court may remand a case where new and material evidence makes the ALJ's decision contrary to the weight of the evidence in the record. *Ashleigh C. v. Saul*, No. 18 CV 2209, 2019 U.S. Dist. LEXIS 172608, at *24 (N.D. Ill. Oct. 4, 2019). In addition, there must be "good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g). However, evidence is not new if it was already presented to the Appeals Council. *See Stepp v. Colvin*, 795 F.3d 711, 726 n.8 (7th Cir. 2015); *see also DeGrazio v. Colvin*, 558 Fed. Appx. 649, 652 (7th Cir. 2014) ("The evidence that the Commissioner characterized as 'new' in her motion—the audiometric report that confirmed DeGrazio's hearing loss—was not new for purposes of sentence six because it already had been presented to the Appeals Council."). Plaintiff's counsel has attempted before to obtain a remand under sentence six based on the Appeals Council's handling of evidence presented to it, and this Court held then that by proceeding under sentence six, the plaintiff had forfeited any argument for remand based on new evidence. *Darick M. v. Saul*, No. 17 CV

10

50140. 2019 U.S. Dist. LEXIS 211196, at *9-11 (N.D. Ill. Dec. 9, 2019) ("To prevent further snafus in the future, this Court applies the forfeiture doctrine and finds that Plaintiff has forfeited all other arguments other than the admittedly erroneous sentence six argument."). For that same reason, the plaintiff here has forfeited her argument for remand based on new evidence.

But even if the plaintiff had not forfeited her new evidence argument, she would still not prevail on it. Under changes effective May 1, 2017, the Appeals Council will consider evidence submitted to it "that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision," 20 C.F.R. § 416.1470(a)(5), and "if you show good cause for not informing us about or submitting the evidence," 20 C.F.R. § 416.1470(b). A court may review *de novo* any legal error by the Appeals Council in its determination that evidence was not new or material. *Stepp*, 795 F.3d at 722. But if the Appeals Council determined that there was no reasonable probability that the evidence would change the outcome of the decision, the Appeals Council determination is unreviewable. *Id.*

Cases are split on whether language identical to what the Appeals Council used here— that the evidence "does not show a reasonable probability that it would change the outcome of the decision" and that "[w]e did not exhibit this evidence"—is a determination of materiality that can be reviewed for legal error, or a discretionary finding that is unreviewable. See *Musonera v. Saul*, 410 F. Supp. 3d 1055, 1060 (E.D. Wisc. 2019) (collecting cases from across the Seventh Circuit). *Musonera* suggests that the divergence of views may arise from the redundant language of the regulation:

> to the extent § 404.970(a)(5) seeks to draw a distinction between a legal determination (in the first clause) and a discretionary one (in the second), the language is redundant. The second clause ("there is a reasonable probability that the additional evidence would change the outcome of the decision") basically

11

>restates the definition of the term "material" which appears in the first clause. If the Council says, as it did here, that the new "evidence does not show a reasonable probability that it would change the outcome of the decision," is this a legal determination of materiality or a discretionary weighing of the evidence?

*Id.* at 1060 (referring to the language of 20 CFR § 404.970(a)(5), governing claims under Title II, which is identical to the language of 20 CFR § 416.1470(a)(5) applicable to the plaintiff's claim under Title XVI).

However, this Court reaches a conclusion different than that reached in *Musonera*. The Court agrees that the Appeals Council could be more direct about the basis of its decisions on new evidence, and that the determination of whether evidence is material is similar to the determination of whether it is reasonably probable to have changed the outcome of the decision. However, the Appeals Council's language here is a far cry from the boilerplate used in *Darick M.*, where it said no more than that it had "'considered the reasons you disagree with the decision and the additional evidence . . . . We found that the information does not provide a basis for changing the Administrative Law Judge's decision.'" *Darick M*., 2019 U.S. Dist. LEXIS at *12-13 (quoting Appeals Council decision). This Court found the language used in *Darick M.* to be "vague, contradictory, and conclusory." *Id.* at 12. In contrast, the Appeals Council's decision here that the evidence presented to it "does not show a reasonable probability that it would change the outcome of the decision" lines up squarely with 20 C.F.R. § 416.1470(a)(5), which states that the Appeals Council will consider evidence that is new and material and where "there is a reasonable probability that the additional evidence would change the outcome of the decision." Thus, the Appeals Council has identified the basis for its decision— that the evidence did not create a reasonable probability that it would change the outcome of the ALJ's decision— which is discretionary and unreviewable. *See Stepp*, 795 F.3d at 722.

12

Further support for that interpretation is found at HALLEX I-3-5-20(C)(4), which directs the Appeals Council to "[i]nclude language in the denial notice specifically identifying the additional evidence (by source, date range, and number of pages) and the reason we are not considering it:

- We find that you did not have good cause for why you missed informing us about or submitting this evidence earlier. We did not consider and exhibit this evidence.

- This evidence is not new because it is a copy of Exhibit(s) [Number]. We did not consider and exhibit this evidence.

- This evidence is not material because it is not relevant to your claim for disability. We did not consider and exhibit this evidence.

- This additional evidence does not relate to the period at issue. Therefore, it does not affect the decision about whether you are disabled beginning on or before the date last insured or decision date, as applicable.

- We find this evidence does not show a reasonable probability that it would change the outcome of the decision. We did not consider and exhibit this evidence."

HALLEX I-3-5-20(C)(4). The other provisions all relate to whether the evidence was new, material, timely submitted, or related to the relevant period of disability. The Appeals Council's decision in this case to use the only provision addressing the probability that the evidence would change the outcome of the decision supports the conclusion that it was making a discretionary determination about the weighing of the evidence, rather than a decision on whether the evidence was new and material.

Finally, the Court notes that in her reply brief the plaintiff did not address the issue of additional evidence at all.

In summary, even if the plaintiff had not forfeited her argument for a remand based on the Appeals Council's handling of her submitted evidence, she would still not prevail on her argument because the Appeals Council made a discretionary determination of the reasonable

13

likelihood that the evidence would affect the outcome of the ALJ's decision, which this Court cannot review.

## IV. CONCLUSION

For the reasons given, the plaintiff's motion for summary judgment is denied, the Commissioner's motion for summary judgment is granted, and the ALJ's decision is affirmed.

Date: June 25, 2020         By: _____
                            Iain D. Johnston
                            United States Magistrate Judge